FERNDALE HEIGHTS UTILITY COMPANY, Appellant and Cross-Appellee, v. ILLINOIS COMMERCE COMMISSION, Appellee and Cross-Appellant.—(Metropolitan Housing Development Corporation, Intervening Appellee.

First District (2nd Division)   No. 81—2612

Opinion filed December 28, 1982.—Rehearing denied February 17, 1983.

Chapman & Cutler, of Chicago (John Vander Vries, Daniel Kucera, and Christine Hehmeyer Rosso, of counsel), for appellant.

Edward G. Finnegan, Ltd., of Chicago, for appellee.

PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Ferndale Heights Utility Company (Ferndale) appeals from an order of the Illinois Commerce Commission (Commission) directing it to

follow its tariffs in reimbursing Metropolitan Housing Development Corporation (MDHC) for the construction of water facilities used by Ferndale to provide water to a tract of land developed by MDHC. Ferndale contends that the order was issued under section 72 of the Public Utilities Act (the Act) (Ill. Rev. Stat. 1979, ch. 111²/₃, par. 76) and that the complaint was untimely under that section. The Commission cross-appeals, contending that the circuit court lacked jurisdiction to hear the appeal from the Commission's order.

In 1969, Ferndale entered into a written agreement with Riverwoods Development Corporation under which Ferndale would provide water to a tract of land to be developed by Riverwoods. The agreement provided that Ferndale would construct the bulk of the facilities needed to bring service to the point where the water would be metered, and that the developer would bear the entire cost of constructing the necessary facilities on the site without reimbursement. Ferndale's tariffs, which were then on file with the Illinois Commerce Commission, provided that a developer which constructed facilities to be used by the utility would convey the facilities to the utility after construction and would be reimbursed for construction costs in the amount of 2¹/₂ times the first year's revenue received by Ferndale from each customer attaching to the system, the reimbursement not to exceed the developer's cost of construction. Ferndale was not certified to serve the area of the proposed development, and therefore it sought a certificate of convenience and necessity from the Illinois Commerce Commission which would allow it to expand its area of service. The certificate was issued on August 6, 1969. In the order granting the certificate, the Commission declared that it was neither approving nor disapproving the agreement between the parties, but that the provisions of the agreement that were contrary to the tariffs of the utility were "null and void." No new agreement was made by the parties, and MDHC, as Riverwood's successor in interest, subsequently took an assignment of the original agreement.

By 1973, all of the facilities that were needed to provide water to the development were completed. The MDHC's cost of construction was $52,175. The facilities actually installed were substantially different from the facilities called for in the agreement.

In 1976, MDHC filed a complaint with the Commission alleging that the agreement violated several sections of the Public Utilities Act (Ill. Rev. Stat. 1979, ch. 111²/₃, par. 1 et seq.), specifically because the property owners covered by the agreement were reimbursed differently than those customers of the utility covered by the tariffs, and that therefore the agreement worked a discrimination against cus-

tomers covered by it. The complaint stated that it was not brought pursuant to section 72 of the Act (Ill. Rev. Stat. 1979, ch. 111²/₃, par. 76). That section authorizes the Commission to order a utility to refund any excessive or discriminatory charges for its services or commodity to its customers, and any complaint under that section must be brought within one year of the time that the commodity or services were provided.

On March 1, 1978, the Commission entered an order stating that the agreement between the parties did not "violate the law and the rules and regulations of the Commission which were in force when the agreement was entered into" and that the complaint was governed by section 72 of the Act and was untimely under that section.

MDHC was granted a rehearing, and on September 6, 1978, the Commission issued an order on rehearing which stated that the complaint was not governed by section 72, that Ferndale's tariffs should govern the issue of the reimbursement to be given MDHC, and specified how the reimbursement should be calculated. The order stated that the maximum reimbursement under the tariffs was $52,175, which was the total amount of the construction costs to MDHC.

Ferndale filed a notice of appeal from the order on rehearing in the circuit court of Sangamon County. That court determined that venue should lie in Cook County, and the case was transferred. The circuit court of Cook County held that the transfer was properly treated as a matter of venue and affirmed the order of the Commission. Ferndale appeals from that order, and the Commission cross-appeals, contending that the circuit court of Sangamon County was without jurisdiction to transfer the case, and that therefore the transfer to Cook County, where jurisdiction was proper, was without effect because an original filing of the appeal in Cook County would have been untimely by the time the transfer was granted.

Section 68 of the Act (Ill. Rev. Stat. 1979, ch. 111²/₃, par. 72) provides in pertinent part:

"[W]ithin 30 days after the service of any final order or decision of the Commission upon and after a rehearing of any rule, regulation, order or decision of the Commission, any person or corporation affected by such rule, regulation, order or decision, may appeal to the circuit court of the county in which the subject-matter of the hearing is situated ***. *** No circuit court shall permit a party affected by any rule, regulation, order or decision of the Commission to intervene or become a party plaintiff or appellant in such court who has not taken an appeal from such rule, regulation, order or decision in the manner as

herein provided."

Ferndale is a utility certified to serve only areas in Cook County, and all the equipment which was installed by the parties is located in Cook County. The subject matter of the hearings before the Commission is clearly in Cook County, and therefore the filing of the appeal in Sangamon County was improper. The circuit court of Sangamon County denied the Commission's motion to dismiss the appeal, but held that the provision of section 68 relating to where the suit could be filed was a matter of venue, and transferred the case to Cook County more than 30 days after the service of the Commission's order.

■■ The circuit court of Cook County held that the filing of this appeal in the wrong county was properly treated as a matter of venue rather than of jurisdiction. We find that the requirement that the appeal be filed in the circuit court of the county where the subject matter of the Commission's hearings is located is jurisdictional. Our supreme court has stated that "[j]urisdiction and venue are distinct legal concepts. Jurisdiction relates to the power of a court to decide the merits of a case, while venue determines where the case is to be heard." (*Baltimore & Ohio R.R. Co. v. Mosele* (1977), 67 Ill. 2d 321, 328, 368 N.E.2d 88.) A circuit court sitting in review of a decision of the Commission is in the exercise of a special jurisdiction, and such appeals must be prosecuted in accordance with the requirements of the Public Utilities Act to be legally effective. (*Village of Waynesville v. Pennsylvania R.R. Co.* (1933), 354 Ill. 318, 321, 188 N.E. 482; *Summers v. Illinois Commerce Com.* (1978), 58 Ill. App. 3d 933, 935, 374 N.E.2d 1111.) Section 68 of the Act prohibits the circuit court from permitting a litigant to proceed with an appeal before it if the litigant has failed to comply with the procedures set forth in the statute. Therefore, the circuit court of Sangamon County had no power to decide the merits of the case because the appeal was not made to the circuit court of the county in which the subject matter of the hearings was located.

■■ A court in the exercise of general jurisdiction is empowered to transfer a case for lack of subject matter jurisdiction if transfer will cure the defect and avoid the necessity of dismissing the suit. (See Ill. Rev. Stat. 1979, ch. 110, par. 48(1)(a), superseded without change of substance by Ill. Rev. Stat. 1981, ch. 110, par. 2—619(a)(1).) Our supreme court has held that the same power attaches to a court sitting in the exercise of a special jurisdiction. In the case of *Central Illinois Public Service Co. v. Industrial Com.* (1920), 293 Ill. 62, 127 N.E. 80, the appellant filed an appeal from a workmen's compensa-

tion award in the circuit court of Coles County. The appellee filed a motion to quash the writ of *certiorari* for lack of subject matter jurisdiction. After that motion was allowed, the appellant moved to reinstate the writ and for transfer of the case to Champaign County, where subject matter jurisdiction was proper. Our supreme court held that although subject matter jurisdiction was lacking in the circuit court of Coles County, that court had jurisdiction of the case for purposes of transfer. The court based its holding on section 1 of the venue act of 1891 (Hurd's Rev. Stat. 1917, ch. 146, par. 36), which provided that "wherever any suit or proceeding shall hereafter be commenced, in any court of record of this State, and it shall appear to the court where the same is pending that the same has been commenced in the wrong court or county, *** the court shall change the venue of such suit or proceeding to the proper court or county ***."

The court noted that the legislature may grant special jurisdiction over a prescribed class of cases to only specific circuit courts (*Central Illinois Public Service Co. v. Industrial Com.* (1920), 293 Ill. 62, 65), but by the use of the words "commenced in the wrong court or county" in the Venue Act, "the legislature intended to reach those cases begun in courts not having jurisdiction of the subject matter as well as those where jurisdiction of the parties, alone, is lacking. *** By this act it is evident that the legislature intended to and did confer on all courts of record in this State, without regard to any other jurisdiction either conferred upon or denied it by common law or statute, jurisdiction to 'change the venue of such suit or proceeding to the proper court or county.' " 293 Ill. 62, 69.

Section 10(2) of the Civil Practice Act replaced section 1 of the Venue Act, which was repealed in 1955. (Ill. Laws 1955, at 2290.) The intermingling of concepts of venue and jurisdiction which was noted by our supreme court in *Central Illinois Public Service Co.* was codified in the new provision, which provided that:

> "Whenever it appears that an action has been commenced in a court which does not have jurisdiction to determine the action, the court shall, at any time, upon its own motion or upon the motion of any party, order the cause transferred to a court of competent jurisdiction in a ·proper venue." Ill. Rev. Stat. 1975, ch. 110, par. 10(2).

This provision was eliminated from the Civil Practice Act in 1976 by Public Act 79—1366. (Ill. Laws 1976, at 1115.) The supplement to the historical and practice notes for this section (Ill. Ann. Stat., ch. 110, par. 10 (Smith-Hurd 1982 Supp.)) suggests that the deletion was not intended to change the substantive law but was merely a recogni-

tion of the fact that the courts of our State are now uniformly courts of general jurisdiction. This view is consistent with the continuing existence of section 48(1)(a) of the Civil Practice Act, which authorizes transfer rather than dismissal of a case if transfer will cure a lack of subject matter jurisdiction.

The Civil Practice Act applies to statutory actions such as appeals from the Illinois Commerce Commission "as to matters of procedure not *** regulated by separate statutes." (Ill. Rev. Stat. 1979, ch. 110, par. 1.) Nothing in section 68 of the Public Utilities Act expressly prohibits the transfer of an appeal which was filed in the wrong county, and therefore we hold that the appeal was properly transferred to the circuit court of Cook County.

■ The Commission contends that if the transfer of the case was proper, the appeal still must be regarded as an action commencing at the time that the case was transferred, rather than at the time the case was begun in Sangamon County. If the appeal is regarded as beginning at the time the case was transferred to Cook County, the appeal is untimely because the case was transferred more than 30 days after service of the Commission's order. The Commission contends that the case of *Herb v. Pitcairn* (1943), 384 Ill. 237, 51 N.E.2d 277, *rev'd* (1945), 325 U.S. 77, 89 L. Ed. 1483, 65 S. Ct. 954, *rehearing denied* (1945), 325 U.S. 893, 89 L. Ed. 2005, 65 S. Ct. 1188, *supplemented* (1945), 392 Ill. 151, 64 N.E.2d 318, establishes that as a matter of Illinois law the transfer of a case from a court where subject matter jurisdiction is lacking does not have the effect of "relating back" the time of the filing of the complaint to the time that it was filed in the improper court for purposes of avoiding the applicable limitations period. However, in the case of *Roth v. Northern Assurance Co. Ltd.* (1964), 32 Ill. 2d 40, 47, 203 N.E.2d 415, our supreme court expressly overruled *Herb*. After *Roth*, there can be no doubt that the filing of a suit in a court without subject matter jurisdiction commences the action for limitations purposes as a matter of Illinois law. Therefore, we hold that the filing of the appeal in Sangamon County was timely despite the fact that that court could not proceed to the merits of the case, and that the appeal was properly heard upon its transfer to the circuit court of Cook County.

Ferndale contends that this case is governed by section 72 of the Act. (Ill. Rev. Stat. 1979, ch. 111⅔, par. 76.) At the time MDHC's original complaint was filed with the Commission, the Act provided that any claim under that section for reparations for excessive charges by a utility were to be filed within one year of the time that the product, commodity or services of the utility were provided to the

complainant for the allegedly excessive charge. (See Ill. Rev. Stat. 1975, ch. 111⅔, par. 76.) The water facilities in question here were completed in 1973, and MDHC's complaint was filed in 1976. Ferndale contends that the complaint to the Commission was therefore untimely and should have been dismissed.

Ferndale's entire argument on appeal is based on the assumption that the complaint in question was a complaint for the refund of excessive charges under section 72. The complaint itself states that no claim is made under section 72 of the Act, but that the complaint is based on the fact that Ferndale entered into a contract with the developers which provided that the developers would be reimbursed for construction differently than the other customers of the utility, and that therefore the contract was discriminatory and unlawful. The complaint also makes an inappropriate prayer for damages under section 73 of the Act, which provides that an award of damages must be sought in the circuit court.

In its order on rehearing, the Commission found that the complaint was not a complaint for reparations under section 72, that the work performed and the equipment installed to serve the development was substantially different from what was called for by the contract and stated that because the parties had not entered into a revised agreement, Ferndale's tariffs control the method and amount of reimbursement to MDHC. The Commission then recited the conditions for reimbursement which were contained in the tariffs, and stated that the ceiling on payments to MDHC would be $52,175, the total cost of construction to MDHC. Ferndale contends that because the order requires an exchange of money between the parties, it could only be made pursuant to section 72 because that section is the only provision of the Act which authorizes the Commission to order a utility to make a payment of money to a customer.

Ferndale is correct in its contention that the Commission has no general authority to fashion an award of damages. (See *Barry v. Commonwealth Edison Co.* (1940), 374 Ill. 473, 477, 29 N.E.2d 1014.) However, the Commission was not fashioning an award of damages or awarding reparations in the instant case. Rather, the Commission was ordering Ferndale to follow its tariffs in reimbursing MDHC instead of relying on a contract which the Commission had already declared to be null and void to the extent that the contract contradicted the tariffs.

■ Section 64 of the Act (Ill. Rev. Stat. 1979, ch. 111⅔, par. 68) authorizes the Commission to hear complaints concerning any violation of the Act committed by any utility. MDHC's complaint alleged

that Ferndale's deviation from the procedures for reimbursement set forth in its tariffs violated the Act in several regards, the most notable being that MDHC was treated in a discriminatory fashion because it was required to construct on-site facilities at its own expense, while reimbursement was available to Ferndale's other customers. Discrimination of this type is prohibited by section 38 of the Act. (Ill. Rev. Stat. 1979, ch. 111²/₃, par. 38.) There can be no doubt that the Commission is authorized to order Ferndale to cease discriminating against a customer. This is essentially what the Commission did, and the fact that a payment of money by Ferndale to MDHC is made necessary by the effect of the order is incidental to the action that the Commission took. Ferndale makes no challenge to the sufficiency of the Commission's order as a matter of law except to contend that the complaint was based on section 72 and is therefore untimely. We hold that the complaint was not based on section 72 of the Act.

For the reasons stated herein, the judgment of the circuit court of Cook County affirming the order of the Illinois Commerce Commission is affirmed.

Affirmed.

DOWNING and PERLIN, JJ., concur.