EDWARD GRAY CORPORATION, Appellant, v. THE INDUSTRIAL COMMISSION et al. (Michael Gimino, Appellee).

First District (Industrial Commission Division) No. 1—99—4478WC

Opinion filed September 28, 2000.

Gregory P. Sujack and Scott T. Schreiber, both of Garofalo, Schreiber & Hart, Chtrd., of Chicago, for appellant.

John M. Popelka, of Anesi, Ozmon, Rodin, Novak & Kohen, Ltd., of Chicago, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Claimant, Michael Gimino, sought benefits pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1994)) for injuries sustained while in the employ of Edward Gray Corporation (Graycor). Gimino was employed by Graycor as an ironworker. Gimino injured his back on October 7, 1994, while cutting metal sheets with a saw. The arbitrator found that Gimino had sustained an accidental injury arising out of and in the course of his employment. The arbitrator awarded medical expenses, 18⁶/₇ weeks of temporary total disability (TTD) benefits, 16³/₇ weeks of maintenance benefits pursuant to section 8(a), and a wage differential award pursuant to section 8(d)(1) of the Act. The Industrial Commission (Commission) in a 2 to 1 decision, affirmed and adopted the decision of the arbitrator. The Commission's decision was confirmed by the circuit court of Cook County. We affirm.

The record reveals that Gimino had suffered numerous lower back problems. Gimino sought workers' compensation benefits for a lower back injury that occurred on May 6, 1986, while employed with Midland Steel. A CT scan at that time revealed a bulging disc at L4-5 and a herniated disc at L3-4. Gimino was determined to be permanently partially disabled to the extent of 8% of the person as a whole. Gimino also sought benefits for a lower back injury sustained on September 19, 1988, while in the employ of M.C. Stanley. He received conservative treatment and returned to work for M.C. Stanley. He received five weeks of TTD benefits. He sustained a second injury while working for M.C. Stanley on June 15, 1989. He sought compensation benefits and filed a civil suit in the circuit court of Cook County. Gimino was determined to be permanently partially disabled to the extent of 32% of the person as a whole. A functional capacity evaluation conducted on November 28-29, 1989, by Worker Rehabilitation Services, Inc., revealed that Gimino was capable of performing at the medium level of work. Mary Petershack, the examiner, concluded that Gimino could return to his previous occupation provided that he limited the amount of stooping and overhead lifting.

Gimino returned to work in April 1990, eventually obtaining employment with Pangere Corporation. On April 1, 1994, Gimino injured his back while turning corrugated sheets of metal. Gimino saw Dr. George Miz on April 25, 1994. He underwent physical therapy and work hardening. A functional capacity evaluation conducted on July 12, 1994, by Med-Works Physical Therapy Center established various lifting restrictions, as well as restrictions against stooping and climbing ladders. The evaluation noted that Gimino did not meet the maximum lifting requirements of his job at Pangere but found that he

could return to work as an ironworker if certain modifications could be placed on the job. Gimino filed a workers' compensation claim (95WC21521) as a result of this accident.

Dr. Miz released Gimino with certain restrictions, but Pangere did not offer Gimino a job or vocational assistance. Gimino did not return to Pangere but obtained work at West Side Erectors, where he worked for several weeks in July 1994. This job was described as a "soft touch" job which was less physically demanding.

Gimino began working for Graycor on August 11, 1994, performing ironwork fabrication at the Ford assembly plant in Chicago. On his job application, Gimino indicated that he suffered from no physical conditions that would affect job safety or performance. Gimino worked with two sizes of aluminum sheeting, one weighing 100 pounds and the other weighing 50 pounds. Gimino's job was to attach these metal sheets to a wall. To do so, he would stand on a roof and pull the sheets up 20 feet onto the roof by a "handline." Once it was on the roof, he would position it on blocks and cut it with a 30-pound saw. Cutting the sheets required him to stand in a bent-over position.

On October 7, 1994, after cutting approximately 20 to 30 sheets, Gimino began experiencing lower back pain. Later, the pain began radiating down into his right leg. Gimino worked the following week but did less and less because of the pain. On October 18, 1994, he was forced to leave work after only 15 minutes because of the pain. He contacted Dr. Vaught, a chiropractor, and scheduled an appointment with Dr. George Miz.

Gimino saw Dr. Vaught on October 19, 1994. He complained of pain radiating down into his right leg when he sat, stood or laid down. Dr. Vaught's records reflect a comment that Gimino had previously injured his back while lifting heavy objects and that the cause of his back problems stemmed from a fall in 1989. Gimino treated with Dr. Vaught from October 19 through November 2, 1994.

On October 25, 1994, Gimino saw Dr. Miz. He gave Dr. Miz a history of pain beginning on October 7, 1994, while working with a saw that weighed approximately 20 to 30 pounds. The pain became progressively worse. Gimino characterized the pain as 50% back pain and 50% right leg pain. Dr. Miz felt that Gimino's symptoms were more consistent with disc pathology than degenerative changes. An MRI performed on October 28, 1994, revealed a moderate to large right L5-S1 disc herniation. Physical therapy was recommended and a work hardening program was instituted.

Gimino underwent physical therapy from October 27, 1994, through February 6, 1995. He underwent a functional capacity evaluation on February 7, 1995, and was released to return to work under a light-medium physical demand level.

Gimino was examined by Dr. Jeffrey Coe on November 18, 1995. Gimino gave Dr. Coe a history of cutting sheet metal at work when he began experiencing pain in his lower back and right leg. After examining Gimino and reviewing his medical records, Dr. Coe diagnosed a right-sided herniation of the L5-S1 disc with right lumbar radiculopathy. He opined that this condition was related to the October 7, 1994, accident.

Gimino was seen by Dr. Calvin Brown on February 24, 1995, at the request of Graycor. Dr. Brown concluded that, based upon the lack of objective findings, Gimino had reached maximum medical improvement and could return to work without restrictions. Brown testified that Gimino may have described the October 7, 1994, accident to him, but that he did not have any independent recollection. Dr. Brown also testified that he took no notes during the examination and that he made his report based upon his memory. Dr. Brown testified that he did not feel that Gimino was at a high risk of reinjuring his back if he returned to ironworking. Dr. Brown further testified that he did not feel that the February 24, 1995, functional capacity evaluation was a valid measure of Gimino's abilities. Brown admitted that the only records he had to review were some of Dr. Miz's records and the MRI. Brown testified that if he had the additional medical records his opinion might change.

Dr. Miz released Gimino to return to work with permanent restrictions of no lifting over 15 pounds on a frequent basis and no lifting over 45 pounds on an occasional basis. Dr. Miz testified that vocational rehabilitation was appropriate because the February 7, 1995, functional capacity evaluation demonstrated that Gimino could not return to work as an ironworker. He further testified that Gimino was totally disabled from October 18, 1994, through February 27, 1995.

Gimino did not return to work as an ironworker for Graycor or any other ironworking employer. Instead, he obtained employment at the Greater Chicago Auto Auction as a porter, making approximately $304 per week. His weekly earnings as an ironworker had been $1,002 per week.

Marlene Butler, a rehabilitation nurse hired by Graycor, noted in a report dated January 16, 1995, that Gimino gave her a history of lower back pain and intermittent pain radiating into his right leg following an October 7, 1994, accident. He indicated that he was bent over, cutting siding material with a saw when he felt the onset of pain. In a February 15, 1995, report Butler noted that Dr. Miz stated that any work more demanding than the restrictions set forth in the functional capacity evaluation would greatly increase the risk of reinjury. She also noted that Dr. Brown indicated that heavy labor might put Gimino at risk.

Pamela Stone, a rehabilitation counselor retained by Gimino, and Kathy Hadley, a vocational specialist retained by Graycor, both testified that Gimino could not return to ironworking and that his job at the Greater Chicago Auto Auction was appropriate for him. They also testified that the restrictions stemming from the November 1987 functional capacity evaluation would not have permitted Gimino to return to work as an ironworker and that, based upon that report, they would not have recommended a return to ironworking.

Gimino's workers' compensation claim against Graycor (94WC61521) was consolidated, for purposes of hearing, with his claim against Pangere (95WC21521). Gimino sought a wage differential award pursuant to section 8(d)(1) of the Act against Graycor and a section 8(d)(2) award against Pangere. The arbitrator concluded that Gimino had sustained an accidental injury arising out of and in the course of his employment with Graycor. The arbitrator found that frequency of the work, cutting 20 to 30 sheets a day, and the bent-over position in which Gimino performed the work were such that the injury arose out of a risk associated with Gimino's employment. This finding was based upon the testimony of Drs. Miz and Coe, as well as Gimino's own testimony, which the arbitrator found unrebutted and credible in all respects.

The arbitrator found that Gimino was temporarily totally disabled for the periods October 18, 1994, through February 27, 1995. This finding was based on the testimony of Gimino, Dr. Miz, Dr. Coe and the reports of Marlene Butler. The arbitrator discounted Dr. Brown's opinion with respect to Gimino's ability to return to work, finding that such opinion was rendered without reviewing the complete records of Dr. Miz and without reviewing any of the records of Gimino's physical therapy or work hardening.

The arbitrator also found Gimino to be permanently partially disabled pursuant to section 8(d)(1) of the Act. The arbitrator noted that Drs. Miz and Coe testified that, based upon the functional capacity evaluation, Gimino could not return to work as an ironworker. The arbitrator found the average weekly wage Gimino could have earned as an ironworker was $1,002. Gimino's current earnings were found to be $304 per week. The arbitrator rejected Graycor's argument that Gimino was not entitled to section 8(d)(1) benefits because he had previously been restricted from ironworking but returned to ironworking anyway. The arbitrator concluded that penalizing Gimino for attempting to return to work at his normal occupation would be inconsistent with the purposes of the Act. The arbitrator found that although 66²/₃% of the difference was $465.35 per week, the arbitrator awarded only $396.87 per week, finding this to be the maximum

amount allowable under section 8(b) for an injury occurring on October 7, 1994.

On appeal, Graycor argues that the Commission erred as a matter of law in determining that Gimino's usual and customary line of work was ironworking. Graycor maintains that following his treatment for the injury sustained while working for Pangere, Gimino was placed under restrictions that precluded him from working as a full-duty ironworker. Because he was physically incapacitated from working as an ironworker as a result of his previous injury, Graycor contends, ironworking could not, as a matter of law, have been Gimino's usual and customary line of employment at the time of his October 7, 1994, injury.

■ The determination of what constitutes a claimant's "usual and customary line of employment" is a question of fact for the Commission, and its determination thereof will not be set aside on review unless it is contrary to the manifest weight of the evidence. As with all fact questions, where the facts are not in dispute and give rise to only one inference, the question becomes one of law, and the Commission's decision is subject to *de novo* review. *Hammel v. Industrial Comm'n*, 253 Ill. App. 3d 900, 626 N.E.2d 234 (1993). Where the evidence gives rise to more than one inference, however, the question remains one of fact and the Commission's determination is accorded great deference. *Morgan Cab Co. v. Industrial Comm'n*, 60 Ill. 2d 92, 324 N.E.2d 425 (1975).

■ The question of whether ironworking was Gimino's usual and customary line of employment becomes one of law only if the evidence that he could not have returned to ironworking is undisputed and of such character as to give rise to no other inference. In support of its position, Graycor relies on the July 12, 1994, functional capacity evaluation which, according to Graycor, demonstrates that Gimino could not have returned to ironworking. Reviewing the evaluation, we note that it did not preclude Gimino from ever returning to ironworking. Rather, it said that he could not perform the maximum lifting requirements of his job at Pangere and could not return unless certain job modifications were made. Further, the opinion of the evaluator was made in the context of the job requirements at Pangere, not Graycor. While this constitutes evidence that Gimino was not capable of performing the maximum lifting requirements of his job at Pangere, it is hardly of such conclusive character that the only permissible inference was that Gimino could not return to work as an ironworker. Moreover, this inference is clearly refuted by the fact that Gimino did in fact return to ironworking at Graycor and was in full performance of his required job duties for 57 days prior to his injury. Additionally,

Gimino testified that he had been an ironworker for 30 years, and Graycor offered no evidence to the contrary. The evidence gives rise to more than one inference, and thus the question of whether ironworking was Gimino's usual and customary line of employment was one of fact for the Commission. We cannot say that its resolution thereof was contrary to the manifest weight of the evidence.

Moreover, Graycor's position is at odds with the primary purpose of the Act, which is to require that the cost of industrial accidents be borne by the industry rather than its individual employees. *Modern Drop Forge Corp. v. Industrial Comm'n*, 284 Ill. App. 3d 259, 671 N.E.2d 753 (1996). To adopt Graycor's position and deny an injured employee benefits under the circumstances of this case would be contrary to the purpose of the Act and would discourage employees from attempting to return to work by penalizing those who do.

Graycor also argues that, as a matter of law, whatever earning impairment Gimino has suffered as a result of not being able to work as an ironworker occurred while he was employed at Pangere. The basis of this argument is the same as the argument above, that Gimino was incapacitated from working as an ironworker as a result of his employment with Pangere. Having rejected that argument, we need not address this one.

■ Gimino argues that the present appeal is frivolous and warrants sanctions pursuant to Supreme Court Rule 375(a) (155 Ill. 2d R. 375 (a)) because Graycor's arguments for reversal are not reasonably well grounded in fact or law and are made in bad faith to harass him and to avoid paying the compensation award. Gimino maintains that there is no evidence at all to support Graycor's argument that ironworking was not his usual and customary line of employment. Graycor contends that, as a result of his accident at Pangere, Gimino was placed on permanent work restrictions that did not allow him to safely perform the full-duty activities of an ironworker and that he obtained his ironworking job at Graycor by lying about his abilities in his employment application.

Although Graycor's argument is unpersuasive, it is not so lacking in foundation in law and evidence as to merit sanctions, and we hereby deny same.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McCULLOUGH, P.J., and HOFFMAN, COLWELL, and HOLDRIDGE, JJ., concur.