# Illinois Official Reports

## Appellate Court

---

**_Farris v. Illinois Workers' Compensation Comm'n_, 2014 IL App (4th) 130767WC**

---

| | |
|---|---|
| Appellate Court Caption | DANNY FARRIS, Appellant, v. ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Phoenix Corp. of the Quad Cities, Appellee). |
| | |
| District & No. | Fourth District<br>Docket No. 4-13-0767WC |
| | |
| Filed | October 28, 2014 |
| Rehearing denied | November 26, 2014 |
| | |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In the matter of a workers' compensation claim for the injuries claimant suffered in an alleged unwitnessed accident that occurred while he was moving and placing large rip rap rocks along an embankment, the decision of the Illinois Workers' Compensation Commission that the claimant met his burden of proving that he sustained accidental injuries arising out of and in the course of his employment was affirmed by the appellate court, the trial court's decision that the Commission's decision was against the manifest weight of the evidence was reversed and the cause was remanded for further proceedings, since, in the absence of a record containing the claimant's testimony, the Commission would be presumed to have properly assessed the claimant's credibility, and any doubts arising from the incomplete record would be resolved in favor of the Commission's findings. |
| | |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 12-MR-21; the Hon. John P. Schmidt, Judge, presiding. |
| | |
| Judgment | Circuit court reversed; Commission's decision reinstated; cause remanded. |

Counsel on
Appeal

M. Michael Waters (argued), of Vonachen, Lawless, Trager & Slevin, of Peoria, for appellant.

Matthew J. Daley (argued), of Odelson & Sterk, Ltd., of Evergreen Park, for appellee.

Panel

JUSTICE STEWART delivered the judgment of the court, with opinion.
Presiding Justices Holdridge and Justices Hoffman, Hudson, and Harris concurred in the judgment and opinion.

## OPINION

¶ 1    The claimant, Danny Farris, worked for the employer, Phoenix Corp. of the Quad Cities, as a union laborer. The claimant maintained that on April 26, 2005, he was involved in a workplace accident as he was moving and placing large rip rap rocks along an embankment. He filed a claim under the Illinois Workers' Compensation Act (the Act) (820 ILCS 305/1 *et seq.* (West 2004)). No one witnessed the accident, and the employer disputed the claimant's assertion that the accident occurred. In October 2005, the matter proceeded to an expedited hearing before the arbitrator pursuant to section 19(b) of the Act (820 ILCS 305/19(b) (West 2004)).

¶ 2    The contested issue of whether a compensable accident occurred has generated a significant amount of procedural history beginning with the October 2005 expedited hearing and leading up to the present appeal. At the conclusion of the expedited hearing in October 2005, the arbitrator found that the claimant was not credible and did not sustain his burden of proving the accident. In April 2007, the Illinois Workers' Compensation Commission (Commission) affirmed and adopted the arbitrator's decision. In January 2009, the circuit court reversed the Commission's decision and remanded the claim for further proceedings. The circuit court reversed the Commission for two reasons: (1) the Commission improperly considered impeachment testimony as substantive evidence and (2) the Commission improperly denied the claimant's request to reopen the proofs to submit a report of a CT myelogram that became available after the close of the proofs. Upon reversal, the Commission vacated the arbitrator's decision and remanded the claim to the arbitrator for further hearings consistent with the circuit court's directives.

¶ 3    On July 14, 2010, the arbitrator reconsidered the record in light of the new CT myelogram report and consistent with the circuit court's directions concerning the impeachment evidence. The arbitrator again denied the claimant benefits, finding that the claimant was not credible and failed to prove that a workplace accident occurred. The claimant again appealed the arbitrator's decision to the Commission. On June 27, 2011, the Commission reversed the arbitrator's decision, finding that the claimant was credible and proved that he sustained a workplace accident. The Commission stated that the claimant "met his burden of proving he

sustained accidental injuries arising out of and in the course of his employment with [the employer] on April 26, 2005." The Commission's decision was based on its assessment of the claimant's testimony as well as his medical records and reports, including the newly admitted CT myelogram report. One commissioner dissented because she agreed with the arbitrator's decision.

¶ 4       The employer appealed the Commission's decision to the circuit court. On August 13, 2013, the circuit court found that the Commission's decision was against the manifest weight of the evidence and entered a judgment reversing the Commission's decision. Specifically, the circuit court stated that it reviewed the record and the Commission's decision and agreed with the dissenting commissioner. The court, therefore, concluded that the ruling of the arbitrator "is to stand." This appeal ensued.

¶ 5                                           BACKGROUND

¶ 6       The central, disputed factual issue that the parties have litigated since October 2005 is whether the claimant was involved in a workplace accident. In the present appeal, the claimant argues that the Commission's finding that a workplace accident occurred was not against the manifest weight of the evidence; therefore, the circuit court improperly reversed its decision.

¶ 7       Our ability to review the merits of the Commission's decision in the present case is hampered by an incomplete record. The record consists of six volumes. Volumes I and II contain the exhibits that were admitted at the first expedited section 19(b) hearing held in October 2005, but do not include transcripts of the testimony of any of the witnesses who testified at that hearing. Volumes III and IV consist of duplicate copies of the exhibits included in volumes I and II. Volumes V and VI contain a third copy of most of the exhibits contained in volumes I and II. Volume VI also includes a complete copy of the transcript of the second hearing before the arbitrator and the pleadings filed in the circuit court proceedings.

¶ 8       As noted above, the Commission based its findings on its assessment of the claimant's testimony in light of the medical records. The record before us, however, does not include any of the testimony that the Commission considered in making its findings. The initial expedited section 19(b) hearing that took place in October 2005 is the only hearing during which witnesses testified. However, the record on appeal does not include any transcripts of the witnesses' testimony.

¶ 9       The claimant's separate appendix that he filed with his brief on appeal purports to include a complete record of the October 25, 2005, expedited arbitration hearing, including the transcripts of the witnesses' testimony. In their briefs, both parties have cited the transcripts contained in the claimant's appendix in support of their respective arguments. The parties, however, have not filed a stipulation pursuant to Illinois Supreme Court Rule 329 to supplement the record with the transcripts or otherwise moved to supplement the record on appeal with the transcripts. Ill. S. Ct. R. 329 (eff. Jan. 1, 2006). During oral argument, this court gave the parties an opportunity to stipulate to the inclusion of the claimant's appendix in the record on appeal, but the parties declined to do so.

¶ 10      It is well settled that the record on appeal cannot be supplemented by attaching documents to a brief or including them in a separate appendix. *In re Parentage of Melton*, 321 Ill. App. 3d 823, 826, 748 N.E.2d 291, 294 (2001); *McGee v. State Farm Fire & Casualty Co.*, 315 Ill. App. 3d 673, 679, 734 N.E.2d 144, 149-50 (2000); *Pikovsky v. 8440-8460 North Skokie*

*Boulevard Condominium Ass'n*, 2011 IL App (1st) 103742, ¶ 16, 964 N.E.2d 124 ("a reviewing court will not supplement the record on appeal with the documents attached to the appellant's brief on appeal as an appendix, where there is no stipulation between the parties to supplement the record and there was no motion in the reviewing court to supplement the record with the material").

¶ 11    The following background information is gleaned from the record on appeal without consideration of the transcripts contained within the claimant's appendix.

¶ 12    The initial expedited section 19(b) hearing took place on October 12, 2005. After the close of the proofs and before the arbitrator rendered his decision, the claimant filed a motion to reopen the proofs in order to submit a CT myelogram report that was ordered by the employer's independent medical examiner prior to the arbitration. The CT myelogram took place on October 4, 2005, and a report of the myelogram was prepared that same day. The report, however, was not made available to the claimant until after the close of the proofs.

¶ 13    On November 29, 2005, the arbitrator denied the claimant's motion to reopen the proofs and rendered his decision finding that the claimant failed to prove that he sustained an accidental injury arising out of and in the course of his employment.

¶ 14    With respect to the central issue of whether the claimant was involved with a workplace accident, the arbitrator stated that he considered the claimant's testimony as well as the testimony of the claimant's cousin, George Farris, who was working with the claimant on the day of the alleged accident. The arbitrator also stated that he considered all of the medical records and reports submitted by the parties.

¶ 15    The arbitrator's decision states that on the day of the incident, the claimant was laying rip rap rocks on 45-degree slopes underneath a bridge overpass. The rocks weighed as little as 20 pounds and as much as 300 pounds. The arbitrator noted that the claimant maintained that he fell while pulling and moving the rip rap rocks, but no one saw the fall. According to the arbitrator, the claimant testified that he landed on his right hip, knee, and shoulder, injuring his low back. The arbitrator wrote that the claimant testified that he did not land on his back, but admitted that he told an agent of the employer that he landed on his back.

¶ 16    According to the arbitrator, the claimant testified that he crawled up the slope in pain and called out for help. After reporting the incident to his foreman, he left work and drove his cousin home approximately 35 miles from the jobsite. The claimant's girlfriend took him to the hospital later that evening where he received injections and was sent home. The records from the hospital visit are included in the record on appeal. The records state that the claimant "threw a rock, lost his footing, twisted & fell." X-rays of the claimant's back did not reveal any abnormalities.

¶ 17    In discussing the emergency room records, the arbitrator noted that although the claimant testified that he fell on the rocky slope, the records from the hospital visit do not note any contusion, abrasion, laceration, bruising, or swelling. According to the arbitrator, there was "no evidence of any traumatic injury, anywhere on [the claimant's] body." The arbitrator found that the lack of evidence of any traumatic injury was "unlikely for a person who claims to have fallen several feet down a 45-degree slope, landing on his back, hip, knee and shoulder on rocky terrain."

¶ 18    The claimant's medical records contained within the record on appeal show that he saw his family doctor, Dr. Shaina Schiwitz, the following day on April 27, 2005. The arbitrator

highlighted Dr. Schiwitz's handwritten notes of this examination in which the doctor wrote, "Severe sudden onset pain & spasm [after] lifting heavy rocks." The arbitrator found that this history was inconsistent with the claimant's testimony because his testimony at the hearing was that his fall precipitated his pain, not lifting the rocks.

¶ 19    The medical records contained in the record on appeal show that in June 2005 the claimant saw a neurologist, Dr. Joshua Warach, who conducted EMG/NCV testing. Again, the arbitrator focused on that portion of Dr. Warach's report in which he described the claimant's history and compared Dr. Warach's history with the claimant's testimony. Dr. Warach's report stated that the claimant "was hit by a rolling rock on his right shin, abruptly twisted and fell onto the ground, landing on his low back" and that "he has experienced acute onset of severe sharp pain in the low back at the time of this injury." The arbitrator found that this history was inconsistent with the claimant's testimony because the claimant did not testify that he landed on his low back.

¶ 20    The claimant treated with a chiropractor, Dr. Douglas Reese, beginning in June 2005. Dr. Reese's medical records include a history of rip rap rocks rolling down an embankment, hitting the claimant's ankles, and knocking his legs out from under him. The claimant attempted to twist to the right so that he could catch himself, and he fell four feet. The arbitrator again found that this history was inconsistent with the claimant's testimony because, at the hearing, the claimant testified that he twisted to the left, not the right.

¶ 21    On September 22, 2005, at the request of the employer, the claimant submitted to an independent medical evaluation conducted by Dr. Robert Gordon. Dr. Gordon's report is included in the record on appeal. Dr. Gordon wrote in his report that the claimant gave a history that included being "hit in his feet/bilateral lower legs" as a result of two rocks rolling down the embankment as he was walking up the embankment carrying a 50-pound rock. When the rocks hit his lower extremities, he threw the rock he was carrying "in such a fashion that he twisted to his right while he was throwing the rock." Dr. Gordon reported that the claimant "ended up falling on to his right shoulder, right flank, and back in this incident."

¶ 22    Dr. Gordon opined that if the claimant was telling the truth about the accident, then he likely suffered a lumbar strain, superimposed on preexisting degenerative changes. The arbitrator noted, however, that Dr. Gordon referenced inconsistencies in the claimant's histories given to various medical providers. The arbitrator also noted that Dr. Gordon referenced inconsistencies between the claimant's claim of bilateral lower extremity radicular symptoms and the lack of diagnostic evidence of neural involvement. In his report, Dr. Gordon recommended that the claimant return to light duty work, continue with anti-inflammatory medication, and obtain the CT myelogram that was the subject matter of the claimant's motion to reopen the proofs. Dr. Gordon explained that the purpose of the CT myelogram was to "further assess for nerve root impingement at this time."

¶ 23    The arbitrator assessed inconsistencies within the claimant's testimony at the hearing, separate and apart from the medical records, as follows:

> "On the one hand, [the claimant] testified that, when he saw the two larger rocks rolling down the slope, he responded by turning to the left to get the 75-100 pound rock he was holding out of the way. On the other hand, he claimed the two rocks rolled only 5 or 6 inches before striking him. The Arbitrator finds it highly unlikely that both could be true, calling into question [the claimant's] credibility. If there were no other evidence casting doubt on [the claimant's] credibility, this doubtful testimony might

seem insignificant, but taking into consideration the evidence as a whole, it seems unlikely [the claimant] is telling the truth."

¶ 24    Again, as noted above, the record does not include a transcript of the claimant's testimony.

¶ 25    In further analysis of the claimant's credibility, the arbitrator found that the inconsistent histories that the claimant gave to various medical providers were significant. The arbitrator, however, believed that, "by far, the most damaging evidence against [the claimant] was the testimony of his own cousin, George Farris." A transcript of George's testimony is not included in the record.

¶ 26    George worked with the claimant on the day of the accident. According to the arbitrator, at the trial, George was asked about a conversation he had with the claimant just prior to the unwitnessed accident, and he testified that he could not recall the substance of the conversation. George admitted, however, that he gave detailed telephonic statements about the conversation to the employer's insurance adjuster, Sandra Herwig.

¶ 27    The arbitrator admitted the transcripts of George's statements to Herwig into evidence, and these transcripts are included in the record on appeal. The transcripts indicate that George told Herwig that shortly before the accident occurred, the claimant told him that he was going to fake an accident. George told Herwig that the claimant had a $23,000 balloon payment coming due for his farm and told him that he was going to fall in order to have the employer pay for the balloon payment.

¶ 28    According to the arbitrator, at the trial, the claimant denied making these statements to George and denied faking the accident. The arbitrator, however, concluded that the statements George made to Herwig were more likely true than not because "[George] had no apparent motive or incentive to lie, and in fact had a motive to be truthful in disclosing his cousin's attempted fraud; namely, to keep his job." The arbitrator found that the claimant failed to prove that he suffered a compensable accident and denied all of the compensation sought by the claimant.

¶ 29    The claimant appealed the arbitrator's decision to the Commission. The record on appeal does not include a copy of the Commission's decision on appeal, although a copy of the decision is included in the claimant's separate appendix. Other documents that are in the record, including a subsequent decision by the Commission, state that on November 13, 2007, the Commission affirmed and adopted the arbitrator's decision. The claimant then appealed the Commission's decision to the circuit court.

¶ 30    Again, the record on appeal does not include the circuit court's order on review. Other documents in the record indicate that the circuit court reversed the Commission on January 30, 2009, and remanded the proceeding to the Commission. Specifically, the Commission's order on remand from the circuit court, which is included in the record on appeal, quoted the circuit court's order as follows:

   "1. This matter is remanded to the Workers' Compensation Commission for further proceedings.

   2. On further hearing, the Workers' Compensation Commission:

       a. Shall not substantively consider any evidence of prior inconsistent statements of George Farris, which purportedly relate to statements concerning [the claimant's] intent to stage an accident, but the [employer] may submit the transcript of George's statement for possible impeachment.

b. Shall allow the [claimant] to submit into evidence the radiology Reports of the MR myelogram performed on October 4, 2005, which were the subject of [the claimant's] Motion to Reopen Proofs.

c. Shall render a decision in the matter consistent with this Order."[1]

On March 2, 2010, pursuant to the circuit court's order, the Commission vacated the arbitrator's previous decision and remanded the matter to the arbitrator for further proceedings consistent with the circuit court's order.

On July 14, 2010, the arbitrator conducted a hearing on remand. The transcript for that hearing is included in the record on appeal. At that hearing, the arbitrator admitted the CT myelogram report into evidence and admitted the transcript of George's inconsistent statement to Herwig for the limited purpose of impeaching his in-court testimony. The arbitrator did not hear testimony from any witnesses on July 14, 2010.

On August 19, 2010, the arbitrator entered a decision after reconsidering the evidence in light of the circuit court's order. The arbitrator once again found that the claimant failed to prove that he was involved in a workplace accident. The arbitrator again emphasized inconsistencies in histories that the claimant gave to various medical providers as well as inconsistencies within his testimony. The arbitrator noted that his histories were inconsistent concerning whether he twisted his back to the left or to the right and whether he did or did not land on his back. The arbitrator concluded, "In short, [the claimant's] testimony as to accident, when compared to histories contained in the records, simply did not have the ring of truth to it." The arbitrator concluded that "the credibility of the [claimant was] the key to the determination of whether the unwitnessed work accident actually occurred. The inconsistencies of the [claimant's] testimony and the inconsistencies contained within the medical records leads to a finding that [the claimant] is not credible."

With respect to the newly admitted CT myelogram report, the arbitrator concluded that it lacked "any probative value on the issue of accident and causation as no opinions have been offered to explain differences with early diagnostic test results and the potential worsening of [the claimant's] condition months after the accident in question."

The claimant appealed the arbitrator's decision to the Commission, and on June 27, 2011, the Commission reversed the arbitrator's decision, finding that the claimant met his burden of proving that he sustained a workplace accident. The Commission found that the "medical records, while not precisely echoing [the claimant]'s testimony, in general support a work-related accident." The Commission found it significant that an EMG/NCV performed on June 2, 2005, showed evidence of "a right L5, S1 radiculopathy, electrophysiologically subacute." The Commission believed that the newly admitted CT myelogram report was too far removed from the accident to show acute postaccident findings, but the report was "consistent with the EMG/NCV insofar as it shows foraminal impingement at L5-S1." The Commission awarded the claimant temporary total disability benefits and medical expenses and remanded the claim to the arbitrator for further proceedings.

---

[1]We note that the employer could have challenged the circuit court's initial reversal of the Commission in this appeal, but failed to do so. *Pace Bus Co. v. Industrial Comm'n*, 337 Ill. App. 3d 1066, 1069, 787 N.E.2d 234, 236-37 (2003). Therefore, the employer has waived any claim that the circuit court's initial reversal order was erroneously entered.

¶ 36           One commissioner dissented. The dissenting commissioner wrote that she "wholeheartedly agree[d] with the Arbitrator's assessment of [the claimant's] credibility." The dissenting commissioner noted inconsistencies between the accounts of the accident in the medical records and the claimant's testimony. The dissenting commissioner also believed that the presence of a subacute L5-S1 radiculopathy revealed in the June 2, 2005, EMG/NCV did not prove an accident occurred on April 26, 2005. The dissent also took issue with the Commission's temporary total disability award.

¶ 37           The employer appealed the Commission's decision to the circuit court. The employer filed its request for summons in the circuit court of Rock Island County. The Rock Island County circuit court issued the summonses that were served on the claimant and the Commission. The claimant moved to dismiss the review proceeding for lack of subject matter jurisdiction and advanced two arguments in support of his motion: (1) that the employer failed to name the Commission as a party in the caption of its request for summons, and (2) that because the claimant was a resident of Sangamon County, not Rock Island County, the Rock Island County circuit court did not have subject matter jurisdiction.

¶ 38           The circuit court denied the claimant's motion to dismiss, holding that the failure to include the Commission in the caption of the request for summons was a scrivener's error. The body of the request properly named the Commission as a party in interest. The court further held that the proper venue for the proceeding was Sangamon County, not Rock Island County. Therefore, the court transferred the case to the circuit court in Sangamon County.

¶ 39           On August 13, 2013, after reviewing the record and the Commission's decision, the circuit court of Sangamon County entered a docket entry finding "that the decision of the Illinois Commission is against the Manifest Weight of the Evidence." The circuit court wrote that it agreed with the dissenting commissioner, that the "ruling of the Commission is reversed," and that the arbitrator's decision "is to stand." The claimant now appeals the circuit court's judgment.

¶ 40                              DISCUSSION

¶ 41                                    I.

¶ 42       Subject Matter Jurisdiction of the Circuit Court of Sangamon County

¶ 43           The first issue the claimant raises on appeal is that the circuit court did not have jurisdiction to review the Commission's decision because (a) the employer's request for summons did not name the Commission as a party in its caption and (b) because the circuit court in Rock Island County issued the summonses when it lacked subject matter jurisdiction. We disagree with the claimant's analysis and hold that the circuit court had jurisdiction.

¶ 44                                    a.

¶ 45              Caption of the Employer's Request for Summons

¶ 46           The claimant correctly asserts that Illinois courts have held that the Administrative Review Law (735 ILCS 5/301 *et seq.* (West 2010)) requires, as a jurisdictional prerequisite, that an administrative agency be named in the caption of a complaint for administrative review. *Bettis v. Marsaglia*, 2013 IL App (4th) 130145, ¶ 19, 2 N.E.3d 344. The Administrative Review Law, however, does not establish the requirements for invoking a circuit court's jurisdiction to review a decision of the Commission under the Act. "The Act clearly does not adopt the

Administrative Review Law." *Wal-Mart Stores, Inc. v. Industrial Comm'n*, 324 Ill. App. 3d 961, 966, 755 N.E.2d 98, 102 (2001). Instead, the jurisdictional requirements are set out in section 19(f) of the Act. The interpretation of section 19(f) is a question of law to be reviewed *de novo*. *Labuz v. Illinois Workers' Compensation Comm'n*, 2012 IL App (1st) 113007WC, ¶ 26, 981 N.E.2d 14.

¶ 47        "[O]n appeal from a decision of the Commission, the circuit court obtains subject matter jurisdiction only if the appellant complies with the statutorily prescribed conditions set forth in the Act." *Residential Carpentry, Inc. v. Kennedy*, 377 Ill. App. 3d 499, 502, 879 N.E.2d 439, 442 (2007). Section 19(f) of the Act sets out the procedure for an appellant to file a request for summons and states that the circuit court "shall by summons to the Commission have power to review all questions of law and fact presented by such record." 820 ILCS 305/19(f)(1) (West 2010).

¶ 48        In the present case, the employer's request for summons did not include the Commission in the caption of the pleading. However, it is undisputed that the employer timely filed the request for summons with the circuit court, named the Commission as a party in interest in the body of the pleading, and listed its address and its attorney of record in the body of the pleading. The request for summons, therefore, complied with section 19(f)(1)'s requirement that the request contain the last known address of all parties in interest and their attorneys of record. 820 ILCS 305/19(f)(1) (West 2010). There is no jurisdictional requirement contained within the language of section 19(f) concerning the content of the caption for the request of summons.

¶ 49        It is further undisputed that the circuit court issued a summons to the Commission and that the employer timely served the summons on the Commission by certified mail. In addition, the employer filed the bond required by section 19(f)(2) on the same day as the request for summons, and it named the Commission as a respondent in the bond's caption. 820 ILCS 305/19(f)(2) (West 2010).

¶ 50        We agree with the circuit court that the employer's failure to name the Commission in the caption of the request for summons was merely a scrivener's error or clerical error that did not deprive the circuit court of subject matter jurisdiction because the employer properly named the Commission as a party in interest, listed its address and attorney of record in the body of the request, and timely served the summons. See, *e.g.*, *Shafer v. Illinois Workers' Compensation Comm'n*, 2011 IL App (4th) 100505WC, ¶ 31, 976 N.E.2d 1 ("The claimant has cited no case (nor have we found any) suggesting that a clerical error in a timely and otherwise properly drafted petition for review strips the Commission of jurisdiction to hear the petition, particularly where, as here, the petition adequately notifies the opposing party and the Commission regarding which case is being appealed.").

¶ 51        The employer in the present case complied with all of the substantive requirements of section 19(f), and the clerical error in the caption of its request for summons did not deprive the circuit court of subject matter jurisdiction. See *Chambers v. Industrial Comm'n*, 213 Ill. App. 3d 1, 5, 571 N.E.2d 1001, 1004 (1991) (the claimant's "written request for summons substantially complied with the requirements of section 19(f)(1)"); *Forest Preserve District v. Industrial Comm'n*, 305 Ill. App. 3d 657, 662, 712 N.E.2d 856, 859 (1999) (employer's failure to include workers' compensation claimant's last known address in a request to issue summons did not deprive the circuit court of subject matter jurisdiction).

## Subject Matter Jurisdiction/Venue

Next, the claimant argues that the circuit court lacked jurisdiction to review the Commission's decision because the employer initially filed the request for summons in a county lacking subject matter jurisdiction. The employer filed the request for summons in the circuit court of Rock Island County. The claimant argued that the Rock Island County circuit court lacked subject matter jurisdiction because, at the time the employer filed the proceeding, the claimant resided in Sangamon County and had never worked in Rock Island County. The claimant moved to dismiss the review proceeding, but the Rock Island County circuit court transferred the case to Sangamon County instead of dismissing the case. The circuit court ruled correctly in transferring the case to Sangamon County.

Section 19(f) of the Act provides as follows: "[T]he Circuit Court of the county where any of the parties defendant may be found, or if none of the parties defendant can be found in this state then the Circuit Court of the county where the accident occurred, shall by summons to the Commission have power to review all questions of law and fact presented by such record." 820 ILCS 305/19(f)(1) (West 2010).

Rock Island County was not the county where the claimant could be found because he resided in Sangamon County. Therefore, we agree with the claimant that the employer should have filed the request for summons in the circuit court in Sangamon County. However, we believe that the circuit court properly transferred the case to Sangamon County.

In *Central Illinois Public Service Co. v. Industrial Comm'n*, 293 Ill. 62, 67, 127 N.E. 80, 81 (1920), the court noted that the Act provided for a review of a decision of the Commission in "[t]he circuit court of the county where any of the parties defendant may be found." (Internal quotation marks omitted.) The employer in that case sought a review of the Commission's decision in the circuit court of Coles County. *Id*. at 64, 127 N.E. at 80. The supreme court held that, under the facts of that case, the only court that had jurisdiction was the circuit court of Champaign County and that the circuit court of Coles County did not have subject matter jurisdiction. *Id*. at 67-68, 127 N.E. at 82.

The supreme court, however, quoted section 1 of "An Act in relation to the practice in the courts of record in this State" (Venue Act) as follows: " 'wherever any suit or proceeding shall hereafter be commenced, in any court of record of this State, and it shall appear to the court where the same is pending that the same has been commenced in the wrong court or county, *** the court shall change the venue of such suit or proceeding to the proper court or county.' " *Id*. at 68, 127 N.E. at 82 (quoting Ill. Rev. Stat. 1917, ch. 146, ¶ 36). The supreme court concluded that the legislature intended for the Venue Act to grant circuit courts the power to change the venue of each suit or proceeding to the proper court or county, including "those cases begun in courts not having jurisdiction of the subject matter." *Id*. at 68-69, 127 N.E. at 82. The supreme court, therefore, held that the circuit court in Coles County could not enter any orders affecting the rights of the parties under the Commission's award, but that the Venue Act empowered the court to "transfer the cause to the proper county, which in this case was Champaign county." *Id*. at 69, 127 N.E. at 82. The court concluded that the circuit court in Coles County properly transferred the proceedings to the circuit court of Champaign County. *Id*. at 69-70, 127 N.E. at 82.

Subsequent to the *Central Illinois Public Service Co.* decision, in 1955, the legislature repealed the Venue Act. *Ferndale Heights Utility Co. v. Illinois Commerce Comm'n*, 112 Ill.

App. 3d 175, 179, 445 N.E.2d 334, 338 (1982). The legislature replaced the Venue Act with section 10(2) of the Civil Practice Act (Ill. Rev. Stat. 1955, ch. 110, ¶ 10(2)), which expressly codified the concepts of venue and jurisdiction that were outlined by the supreme court in *Central Illinois Public Service Co. Ferndale Heights Utility Co.*, 112 Ill. App. 3d at 179, 445 N.E.2d at 338. The legislature subsequently eliminated the language of section 10(2) of the Civil Practice Act in 1976 (Pub. Act 79-1366, § 16 (eff. Aug. 6, 1976)), but this "deletion was not intended to change the substantive law but was merely a recognition of the fact that the courts of our State are now uniformly courts of general jurisdiction." *Ferndale Heights Utility Co.*, 112 Ill. App. 3d at 179-80, 445 N.E.2d at 338.

¶ 60    Currently, section 2-619(a)(1) of the Illinois Code of Civil Procedure provides for the dismissal of a cause of action for a lack of subject matter jurisdiction, but only if "the defect cannot be removed by a transfer of the case to a court having jurisdiction." 735 ILCS 5/2-619(a)(1) (West 2010). Section 2-104 of the Code of Civil Procedure also provides that no action shall "be dismissed because commenced in the wrong venue if there is a proper venue to which the cause may be transferred" and provides the procedure for filing a motion to transfer venue. 735 ILCS 5/2-104(a) (West 2010).

¶ 61    Although the Code of Civil Procedure generally does not apply to workers' compensation proceedings, "where the Act or Commission rules do not regulate a topic, civil provisions have been applied to workers' compensation actions." *Illinois Institute of Technology Research Institute v. Industrial Comm'n*, 314 Ill. App. 3d 149, 154, 731 N.E.2d 795, 800 (2000). See also *Wal-Mart Stores, Inc.*, 324 Ill. App. 3d at 965, 755 N.E.2d at 101 (applying section 2-619(a)(1) of the Code of Civil Procedure for the dismissal of a judicial review action that lacked jurisdiction).

¶ 62    Accordingly, we believe that the supreme court's holding in *Central Illinois Public Service Co.* is still applicable under the current statutory scheme of the Act. When a workers' compensation appeal is mistakenly filed in the wrong county, nothing in section 19(f) of the Act prohibits a circuit court from transferring the case to the proper county. Therefore, we hold that the circuit court of Rock Island County correctly transferred the employer's appeal to the circuit court of Sangamon County rather than dismissing the employer's appeal for a lack of subject matter jurisdiction.

¶ 63    The claimant's argument that the circuit court lacked jurisdiction has no merit.

¶ 64                                    II.

¶ 65            The Commission's Finding That a Compensable Accident Occurred

¶ 66    Having determined that the circuit court had jurisdiction to consider the employer's appeal, we next turn to the claimant's argument that the circuit court improperly reversed the Commission's finding that a compensable accident occurred. As noted above, the Commission found in favor of the claimant on the central, disputed issue of fact of whether a compensable accident occurred and based its decision largely on its assessment of the claimant's credibility.

¶ 67    Initially, we note that the employer argues that the arbitrator was in the best position to determine the claimant's credibility. This is not the law. The Commission is the finder of fact, and it is the Commission that we owe deference on factual issues. *Edward Gray Corp. v. Industrial Comm'n*, 316 Ill. App. 3d 1217, 1222, 738 N.E.2d 139, 143 (2000). "[O]ur supreme court has consistently held that when the Commission reviews an arbitrator's decision, it

- 11 -

exercises original, not appellate, jurisdiction and that the Commission is not bound by the arbitrator's findings." *Hosteny v. Illinois Workers' Compensation Comm'n*, 397 Ill. App. 3d 665, 675, 928 N.E.2d 474, 483 (2009). Accordingly, we reject the employer's request that we give deference to the arbitrator's decision, rather than the Commission's decision.

¶ 68 Whether the claimant suffered from a compensable accident is a question of fact to be determined by the Commission. *National Freight Industries v. Illinois Workers' Compensation Comm'n*, 2013 IL App (5th) 120043WC, ¶ 26, 993 N.E.2d 473. The Commission's findings with respect to factual issues are reviewed under the manifest weight of the evidence standard. *Tower Automotive v. Illinois Workers' Compensation Comm'n*, 407 Ill. App. 3d 427, 434, 943 N.E.2d 153, 160 (2011). "For a finding of fact to be against the manifest weight of the evidence, an opposite conclusion must be clearly apparent from the record on appeal." *City of Springfield v. Illinois Workers' Compensation Comm'n*, 388 Ill. App. 3d 297, 315, 901 N.E.2d 1066, 1081 (2009).

¶ 69 In the present case, there were no witnesses to the accident. Therefore, the claimant was the only witness who testified that the accident occurred. In assessing the claimant's credibility, the Commission commented on inconsistencies in the claimant's testimony, but believed that they were insignificant, finding that "[t]he medical records, while not precisely echoing [the claimant's] testimony, in general support a work-related accident." One commissioner dissented because she "wholeheartedly agree[d] with the Arbitrator's assessment of [the claimant's] credibility." The circuit court, in turn, reversed the Commission's decision because, the court noted, it agreed with the dissenting commissioner. Assessment of the claimant's credibility was the common lynchpin of the different decisions of the arbitrator, the majority of commissioners, the dissenting commissioner, and the circuit court.

¶ 70 In the present appeal, we are faced with the task of reviewing the Commission's decision based on the manifest weight of the evidence standard, but the record on appeal does not contain the most crucial evidence that the Commission considered in reaching its decision, *i.e.*, the claimant's testimony.

¶ 71 In the present appeal, the claimant is the appellant, and it is the appellant's duty to provide the reviewing court with a sufficiently complete record. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391, 459 N.E.2d 958, 959 (1984). Because the appellant has the duty to provide a complete record, a reviewing court will usually resolve any doubts caused by an incomplete record against the appellant. *Id.* at 392, 459 N.E.2d at 959.

¶ 72 However, when a party appeals to the appellate court following the entry of a judgment of the circuit court in a workers' compensation proceeding, it is the decision of the Commission, not the judgment of the circuit court, which is under consideration. *Travelers Insurance v. Precision Cabinets, Inc.*, 2012 IL App (2d) 110258WC, ¶ 33, 967 N.E.2d 856 ("In a workers' compensation proceeding, the Commission, an administrative agency, is the ultimate decision-maker" and the appellate court "reviews the decision of the Commission, not the decision of the circuit court."). Therefore, our deference is afforded the Commission's decision, not the circuit court's or the arbitrator's decisions, and our review of the Commission's factual findings is "extremely deferential." *Dodaro v. Illinois Workers' Compensation Comm'n*, 403 Ill. App. 3d 538, 544, 950 N.E.2d 256, 261 (2010). Accordingly, in an appeal from the circuit court in a workers' compensation proceeding, a reviewing court will resolve any doubts caused by an incomplete record in favor of the findings made by the Commission.

¶ 73    In *Foutch*, the supreme court explained that "in the absence of [a complete] record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Foutch*, 99 Ill. 2d at 392, 459 N.E.2d at 959. Extending this concept to our review in the present case, because it is the decision of the Commission that is under consideration, the lack of a complete record requires us to presume that the Commission's decision was in conformity with law and had a sufficient factual basis, not the circuit court's decision. The employer initially appealed the Commission's decision to the circuit court to challenge the Commission's factual finding with respect to whether a compensable accident occurred and, in the present appeal, continues to argue that the Commission's factual findings were against the manifest weight of the evidence.[2]

¶ 74    "An issue relating to a circuit court's factual findings and basis for its legal conclusions obviously cannot be reviewed absent a report or record of the proceeding." *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156, 839 N.E.2d 524, 532 (2005). The same is true with respect to factual findings made by the Commission. In the present case, the record does not include the testimony of the claimant. We must presume, therefore, that the Commission properly assessed the claimant's credibility and considered his testimony along with other competent evidence in finding that a compensable accident occurred. *Webster v. Hartman*, 195 Ill. 2d 426, 433-34, 749 N.E.2d 958, 963 (2001) (Because of an incomplete record, the supreme court "presume[d] that the trial court heard adequate evidence to support its decision and that its order granting defendant's motion to enforce settlement was in conformity with the law."). Without a transcript of the claimant's testimony, we cannot conclude that the Commission's findings based on his testimony were against the manifest weight of the evidence. Accordingly, we must affirm the Commission's decision and reverse the circuit court's judgment.

¶ 75                                  CONCLUSION

¶ 76    For the foregoing reasons, we reverse the judgment of the circuit court, reinstate the Commission's decision, and remand the claim for further proceedings pursuant to *Thomas v. Industrial Comm'n*, 78 Ill. 2d 327, 399 N.E.2d 1322 (1980).

¶ 77    Circuit court reversed; Commission's decision reinstated; cause remanded.

---

[2]In his brief, the claimant argues that we should reverse the circuit court because it did not have an adequate record before it to review the Commission's decision. As noted above, however, our task is to review the Commission's decision based on the record on appeal under the manifest weight of the evidence standard, not the circuit court's decision. Nonetheless, it is worthy of note that it was the employer that initially allowed the filing of an incomplete record upon review before the circuit court, which has also resulted in this court having an incomplete record. In addition, we are at a loss to understand how the circuit court could have found that the Commission's decision was against the manifest weight of the evidence, based on a determination that the claimant was not credible, after reviewing a record that does not include the claimant's testimony.

- 13 -