No. 1-19-1650WC

2020 IL App (1st) 191650WC-U

Workers' Compensation
Commission Division
Order Filed: March 20, 2020

No. 1-19-1650WC

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| HUGO GONZALEZ, | ) | Appeal from the |
| | ) | Circuit Court of |
| Appellant, | ) | Cook County |
| | ) | |
| v. | ) | Nos.  18 L 50813 |
| | ) | |
| | ) | |
| THE ILLINOIS WORKERS' COMPENSATION | ) | |
| COMMISSION *et al.*, | ) | Honorable |
| | ) | Michael F. Otto, |
| (A&D Logistics, Appellee). | ) | Judge, Presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Holdridge and Justices Hudson, Cavanagh, and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held:* We affirmed the circuit court's judgment confirming the Illinois Workers' Compensation Commission's decision denying the claimant benefits under the Illinois Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2014)),

- 1 -

over the claimant's argument that the Commission's findings that he failed to prove that he sustained an accident on March 17, 2016 which arose out of and in the course of his employment with A&D Logistics is against the manifest weight of the evidence.

¶ 2    The claimant, Hugo Gonzalez, appeals from a judgment of the circuit court of Cook County which confirmed a decision of the Illinois Workers' Compensation Commission (Commission), denying him benefits under the Illinois Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2014)) for injuries he is alleged to have received on March 17, 2016, while working for A&D Logistics (A&D).  For the reasons which follow, we affirm the judgment of the circuit court.

¶ 3    The following recitation of the facts relevant to a disposition of this appeal is taken from the evidence adduced at the arbitration hearing held on January 23, 2018.

¶ 4    The claimant was employed by A&D as a truck driver for approximately five years prior to the events giving rise to this claim. His duties consisted of delivering Chinese food supplies to various locations in Illinois and surrounding states. Upon arriving at a delivery location, the claimant would remove a ramp stored under his truck and position the ramp to allow unloading. He used a two-wheel dolly to transport the customer's products down the ramp from the truck to the customer's facility.

¶ 5    The claimant testified that, on March 9, 2016, he complained to A&D's dispatcher, Mr. Chen, that the right wheel on the two-wheel dolly in his truck was shaking. He stated that he brought the dolly into Chen's office to be repaired. At approximately 6:22 p.m. on that date, he received a text message from his boss, Ming Kit Ngai, stating that he had "[a]lready let the mechanic know about the hand truck, he will work on it tonight."

¶ 6    On March 17, 2016, the claimant's delivery route consisted of 12 different locations. His

third stop was located in Lansing, Michigan. The claimant testified that, when he arrived at that location at about 11:00 a.m., he pulled out the ramp from underneath his truck and proceeded to load the customer's goods onto a dolly—the same two-wheel dolly which he had complained about on March 9, 2016. According to the claimant, as he was pushing the loaded dolly down the ramp, a wheel came off, causing him to fall off the ramp onto the street about four feet below. He stated that his left knee struck the ground first and he came to rest on his side. The claimant described experiencing pain in his left knee that he characterized as a 9 on a scale of 10.

¶ 7    The claimant completed the remainder of his deliveries before returning to A&D's distribution center in Chicago. He testified that he told Chen he had an accident while making a delivery that day and showed Chen his knee. The claimant then went home where he resided with his girlfriend, Antoinette Nava. The claimant stated that he told Nava about his work accident, and she applied "icy hot" to his left knee and gave him Tylenol. Nava testified that she specifically remembered the events of March 17, 2016, as it was St. Patrick's Day. She stated that the claimant called her earlier that day and told her that he hurt his knee. When the claimant came home, she noticed him limping and asked to see his leg. According to Nava, she observed swelling and bruising in the area of the claimant's left knee. She admitted that the claimant never complained about his right leg or knee, and she did not see any injury to the claimant's right knee.

¶ 8    The claimant testified that, on the following day, he could not bend his left knee. Nevertheless, he was able to work. A&D's records reflect that the claimant worked on March 18 and 19. The claimant stated that the pain in his left knee increased, and he knew "something was wrong, really wrong on my knee." Pursuant to his normal schedule, the claimant did not work on March 20, 21 and 22. The claimant testified that, after working on March 23, 2016, he told Ngai

about his work accident. Ngai suggested that he take several days off. According to the claimant, Ngai told him to take some Tylenol. He stated that Ngai did not ask him to complete an accident report but did state that the required paperwork would be completed. Ngai testified that he never had a conversation with the claimant in March 2016, concerning an injury to the claimant's left knee. He had no recollection of any conversation with the claimant on March 23, 2016.

¶ 9    The claimant worked from March 23 through March 26, 2016, and took his regularly scheduled days off from March 27 through March 29, 2016.

¶ 10    The claimant first sought medical care for his left knee on March 29, 2016. He went to the emergency room at Good Samaritan Hospital, complaining of bilateral knee pain and left knee swelling. The hospital's notes of that visit contain a history which states the following: "3weeks ago patient was delivering food at a Chinese restaurant when he fell onto both knees. He got up and was able to bear weight and walked and finished her (sic) shift. He took a few days off, to help the pain resolve, however he went back to work and has had persistent pain for the past three weeks." X-rays were taken of both of the claimant's knees that revealed degenerative changes and bilateral loss of the medial tiblofemoral joint spaces. The claimant was diagnosed with a contusion of the knee and prescribed icing, Tylenol, and Ibuprofen. He was advised to follow up with a physician. According to the claimant, he could not schedule a follow-up appointment because he was unable to obtain a "work comp number" from A&D.

¶ 11    The claimant worked on March 30, 2016, and took his regularly scheduled days off on March 31 and April 1, 2016.

¶ 12    Ngai denied having any conversation or text exchange with the claimant in March or April 2016, concerning an injury to the claimant's left knee. However, the record contains evidence of

a text sent by Ngai to the claimant on April 1, 2016, which states: "Mr. Chen needs to know is (sic) your leg feel better? Can you work tomorrow?" Ngai admitted having sent the text.

¶ 13     During the month of April 2016, the claimant worked on April 2, was off on April 3 and 4, worked from April 5 through April 9, was off from April 10 through April 12, worked from April 13 through April 16, was off on April 17 and 18, worked on April 19, and was off on April 20.

¶ 14     On April 20, 2016, the claimant was seen by Dr. Intesar Hussain at the Pain Center of Illinois for a follow-up visit related to cervical pain resulting from a May 23, 2015, unrelated motor vehicle accident. In addition to his examination of the claimant's neck and back, Dr. Hussain examined the claimant's lower extremities. Dr. Hussain's notes of that examination reflect 5/5 findings for hip flexion, knee flexion, knee extension, inversion, and eversion, bilaterally. The claimant's deep tendon reflexes were 2+, bilaterally, and straight leg raise testing was negative, bilaterally. There is no mention in the doctor's notes of that visit of any injury to the claimant's left knee.

¶ 15     In the last 10 days of April 2016, the claimant worked from April 21 through April 23, was off on April 24, worked April 25 through April 28, was off on April 29, and worked on April 30. A&D's records reflect that the days the claimant did not work in April 2016 were his regularly scheduled days off.

¶ 16     The claimant testified that he was unable to complete his deliveries on April 30, 2016, due to left knee pain. He discontinued his delivery route and returned to A&D's facility. After that date, the claimant was not put on any A&D work schedule. He testified that he "guessed" that he had been fired but denied that he was ever told that he was fired.

¶ 17    There is no record of the claimant having sought medical care from April 20, 2016, through June 13, 2016. When he was seen on June 14, 2016, by Dr. Neema Bayran at the Pain Center of Illinois for neck pain resulting from his unrelated motor vehicle accident, the claimant reported an injury to his left knee. Dr. Bayran's notes of that visit state the following:

> "[The claimant] reports a work-related injury which happened back in February 2016. He works as a delivery guy. He was delivering Chinese Food. The patient states that he was making a delivery and he was in the middle of the ramp when the two-wheeler wheels came off. He fell and landed on his left knee. He states that he told his supervisor and was told that he would be okay in a couple of days."

Dr. Bayran's examination revealed tenderness and swelling of the claimant's left knee. He prescribed physical therapy and recommended that the claimant have an MRI of his left knee. Dr. Bayran restricted the claimant from working. The claimant testified that he was not sure if he told Dr. Bayran the exact date of his fall and that he did not remember telling the doctor that he fell on February 1, 2016.

¶ 18    On June 21, 2016, the claimant had the recommended MRI of his left knee. The scan revealed a mild intrasubstance signal alteration of the medial meniscus without surface tear, a slight lateral patellar tilt, a tiny osteochondral defect along the articular surface of the medial femoral condyle, and minimal effusion.

¶ 19    On June 27, 2016, the claimant appeared for his initial physical therapy evaluation at ATI. The ATI intake form references a February 1, 2016, accident date. The claimant testified that he did not tell the therapist that his accident occurred on February 1, 2016.

¶ 20    When the claimant returned to see Dr. Bayran on July 1, 2016, be was referred to Dr.

George Markarian, an orthopedic surgeon, for an evaluation of his left knee.

¶ 21    On July 9, 2016, the claimant was first seen by Dr. Markarian. The doctor's notes reflect that the claimant gave a history of injuring his left knee on March 17, 2016, when the wheel fell off the dolly he was pushing, and he fell and "landed and twisted his left knee." After examining the claimant and reviewing his MRI scan, Dr. Markarian diagnosed an osteochondral defect and a medial meniscus tear. He ordered x-rays and continued to restrict the claimant from working.

¶ 22    The claimant next saw Dr. Markarian on July 30, 2016. After reviewing the claimant's x-rays, Dr. Markarian noted that they did not indicate arthritis. He recommended a repeat skler's view x-ray and a left knee arthroscopy to remove a lose body and nano/microfracture of the defect. He continued to restrict the claimant from working.

¶ 23    On September 7, 2016, the claimant was examined by Dr. Lawrence Lieber at the request of A&D. In his report of that examination, Dr. Lieber noted that the claimant gave a history of injuring his left knee on March 17, 2016, when the wheel fell off the dolly he was pushing, causing him to fall to the ground and land on his left knee. The claimant complained of pain with ambulation and going up and down stairs. He also complained of left knee swelling, popping, weakness, and stiffness. On examination, Dr. Lieber detected positive joint line tenderness, medially and laterally; positive McMurray and Steinmann tests; positive patellar apprehension, pain, and facet tests; and tenderness to palpation. After his examination of the claimant and a review of his medical records, including the MRI of his left knee, Dr. Lieber diagnosed the claimant as suffering from internal derangement and chondromalacia of the left knee. According to Dr. Lieber, the claimant's objective findings were consistent with chondromalacia of the patellofemoral joint area. He noted his belief that the claimant's subjective complaints were out of

proportion to his underlying abnormalities. Dr. Lieber opined that the claimant's MRI scan showed a minor osteocondral lesion with no evidence of acute trauma from the alleged March 17, 2016, accident. He found the following: the claimant was not in need of any further testing or treatment, including surgery; that he had reached MMI as of July 1, 2016; and that he was capable of full duty work. Dr. Lieber also opined that the claimant's left knee condition showed no causal connection to his alleged work accident in March 2016.

¶ 24    When Dr. Markarian was deposed on March 23, 2017, he opined that the claimant had an osteocondral defect that is causally related to his work accident of March 17, 2016. He did not believe that the claimant's left knee condition is degenerative or arthritic. According to Dr. Markarian, the claimant's left knee condition will probably worsen over time. He continued to recommended surgery and advised that the claimant remain off of work until his left knee is repaired.

¶ 25    The claimant continued to treat with Dr. Markarian on a monthly basis. His complaints remained unchanged, and, up to the claimant's last appointment of January 10, 2018, Dr. Markarian continued to recommend surgery and restrict the claimant from working.

¶ 26    The claimant testified that, prior to his fall on March 17, 2016, his left knee was asymptomatic but now he experiences constant left knee pain, swelling, and weakness. He stated that he feels pain while kneeling and walking up and down stairs and that he has lost his trucker's license because he is unable to pass the physical. According to the claimant, he has not worked since June 14, 2016, when Dr. Bayran restricted him from working.

¶ 27    Following the arbitration hearing held on January 23, 2018, the arbitrator issued a written opinion on March 21, 2018, finding that the claimant failed to prove (1) that he sustained accidental

injuries on March 17, 2016, that arose out of and in the course of his employment with A&D, or (2) that he provided A&D with timely notice of an accident on March 17, 2016. Consequently, the arbitrator did not award the claimant any benefits pursuant to the Act. In so ruling, the arbitrator found that the claimant's testimony was not credible. He noted the discrepancies in the reported accident dates contained in the claimant's medical records and the fact that the claimant first sought medical treatment on March 29, 2016, and sought no further treatment until after he was terminated on April 30, 2016. In addition, the arbitrator found Nava be less than credible. On the issue of notice, the arbitrator also based his determination on the claimant's lack of credibility.

¶ 28    The claimant filed a petition for review of the arbitrator's decision before the Commission. On November 1, 2018, the Commission issued a unanimous decision affirming and adopting the arbitrator's decision.

¶ 29    The claimant sought a judicial review of the Commission's decision in the circuit court of Cook County. On July 6, 2019, the circuit court confirmed the Commission's decision, and this appeal followed.

¶ 30    The claimant raises two issues on appeal. He argues both that the Commission's finding that he failed to prove that he suffered an accident while working on March 17, 2016, is against the manifest weight of the evidence, and that the Commission's finding that he failed to give A&D timely notice of his alleged work-related accident on March 17, 2016, is also against the manifest weight of the evidence. As the giving of the statutorily required notice is jurisdictional (*Thrall Car Manufacturing Co. v. Industrial Comm'n*, 64 Ill. 2d 459, 465 (1976)), we address the notice issue first.

¶ 31    The claimant asserts that his testimony that he informed Chen, A&D's dispatcher, of his

accident on March 17, 2016, and showed him his knee, is corroborated by Ngai's text message of April 1, 2016, stating that "Mr. Chen needs to know is (sic) your leg feel better? Can you work tomorrow?"

¶ 32     Relying upon Ngai's testimony that he did not have any conversation or text exchange with the claimant in March or April of 2016 concerning an injury to the claimant's left knee, the fact that there is no reference in the claimant's employment file to a work accident on March 17, 2016, and the Commission's determination that the claimant lacked credibility, A&D argues that the Commission's finding that the claimant failed to give timely notice of his alleged work accident is not against the manifest weight of the evidence. It contends that Ngai's text of April 1, 2016, is only evidence that he and Chen were aware that the claimant had a leg injury, not that he had suffered a work-related injury. In the alternative, A&D appears to argue that, even if this court were to determine that the claimant gave notice in some form, it was prejudiced by an inability to investigate the alleged accident due to the inconsistent information given by the claimant as to the date of the accident. A&D's alternative argument appears to be based upon its contention that "[t]he Commission correctly found that *** [the claimant] failed to establish he provided proper notice." However, the Commission did not find that the claimant failed to give "proper notice." The preprinted form portion of the arbitrator's decision that the Commission adopted states that "[t]imely notice of this accident was not given to Respondent," and in the typed findings, also adopted by the Commission, it states that the claimant "failed to provide timely notice to the Respondent within 45 days of his alleged March 17, 2016, accident." This is not a case where the issue is improper notice; rather, the issue is one of no notice.

¶ 33     Section 6(c) of the Act requires an injured employee to give notice of an accident "to the

employer as soon as practicable, but not later than 45 days after the accident." 820 ILCS 305/6 (c) (West 2014). The giving of notice is jurisdictional, and the failure to give the employer notice of a work-related accident will bar an employee's claim under the Act. *Thrall Car Manufacturing Co.*, 64 Ill. 2d at 465. Whether a claimant gave timely notice of a work-related accident is a question of fact to be resolved by the Commission, and its determination of the issue will not be disturbed on review unless it is against the manifest weight of the evidence. *Tolbert v. Illinois Workers' Compensation Comm'n,* 2014 IL App (4th) 130523WC, ¶ 66.

¶ 34    For the Commission's resolution of a fact question to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Tolbert,* 2014 IL App (4th) 130523WC, ¶ 39. Although we will not substitute our judgment for that of the Commission on a question of fact, we will not hesitate to overturn a factual determination made by the Commission when the clearly evident, plain, and indisputable weight of the evidence compels an opposite conclusion. *Dye v. Illinois Workers' Compensation Comm'n,* 2012 IL App (3d) 110907WC, ¶ 10.

¶ 35    The claimant's testimony that, on March 17, 2016, he told Chen, A&D's dispatcher, that he had an accident while making a delivery that day and showed Chen his knee was unrebutted. Chen did not testify in this case. As the claimant argues, Ngai's text message of April 1, 2016, stating that "Mr. Chen needs to know is (sic) your leg feel better," corroborates his testimony in that he gave notice of his alleged accident to Chen. The Commission's finding that the claimant failed to give A&D the statutorily required notice is based on its finding that the claimant lacked credibility on the issue of accident and the absence of any reference to a work accident in his employment file. However, the Commission never addressed the impact that the claimant's unrebutted testimony and Ngai's text message had on its conclusion that the claimant failed to give

A&D notice of his alleged accident on March 17, 2016.

¶ 36    Based on the claimant's unrebutted testimony that he told Chen of his alleged accident on March 17, 2016, and Ngai's text message of April 1, 2016, we conclude that the Commission's finding that the claimant failed to give A&D timely notice of his alleged work-related accident on March 17, 2016, is against the manifest weight of the evidence.

¶ 37    Next, we address the claimant's argument that the Commission's finding that he failed to prove that he suffered an accident while working on March 17, 2016, is against the manifest weight of the evidence. The claimant argues that his testimony, his medical records, the testimony of Nava, and the causation opinion of Dr. Markarian establish that he suffered a work-related accident on March 17, 2016. According to the claimant, the Commission's determination that he lacked credibility is erroneously based, *inter alia,* upon the following: (1) insignificant discrepancies as to the date of accident contained in his medical records; (2) the fact that he continued to work while injured; and (3) irrelevant evidence as to Nava's residences that formed the basis of the Commission's determination that she was not a credible witness.

¶ 38    A&D argues that the Commission's determination that the claimant failed to prove he suffered an accident while working on March 17, 2016, is supported by the discrepancies as to the accident date contained in the claimant's medical records, his delay in seeking medical care, the claimant's ability to work full duty during the two months following the alleged accident, and the fact that the claimant's medical records fail to corroborate his subjective complaints.

¶ 39    To obtain compensation under the Act, the claimant must establish by a preponderance of the evidence that he suffered a disabling injury that arose out of and in the course of his employment. *Land & Lakes Co. v. Industrial Comm'n*, 359 Ill. App. 3d 582, 591-92 (2005).

Whether an employee suffered an employment related accident is a question of fact to be resolved by the Commission, and its resolution of the issue will not be disturbed on review unless it is against the manifest weight of the evidence. *Farris v. Illinois Workers' Compensation Commission*, 2014 IL App (4th) 130767WC, ¶ 68. In resolving the issue, it is the function of the Commission to assess the credibility of the witnesses, assign weight to the evidence, and draw reasonable inferences from the evidence. *ABBF Freight System v. Illinois Workers' Compensation Commission*, 2015 IL App (1st) 141306WC, ¶ 19.

¶ 40    Although the record in this case supports the conclusion that the claimant told A&D's dispatcher on March 17, 2016, that he injured his left knee when he fell while working that day, the question remains whether he proved that he actually suffered an accident on March 17, 2016.

¶ 41    The records of Good Samaritan Hospital's emergency room relating to the claimant's visit on March 29, 2016, state that he gave a history of having fallen while making a delivery three weeks earlier, which would fix the date of accident as March 8, 2016. Dr. Bayran's notes of the claimant visit on June 14, 2016, state that the claimant reported having injured his left knee when he fell while making a delivery "back in February 2016." The intake form completed when the claimant appeared for his initial therapy evaluation at ATI on June 27, 2016, references an accident date of February 1, 2016. The claimant denied telling either Dr. Bayran or the ATI therapist who completed his intake form that he injured his knee on February 1, 2016; however, he offers no explanation as to where these unrelated individuals would have obtained that information. It was not until the claimant was seen by Dr. Markarian on July 9, 2016, in excess of three months after his alleged accident and more than two months after he was fired, that there is a mention in the claimant's medical records that he reported having injured his left knee while working on March

17, 2016. Although the claimant was consistent in reporting that he was injured when he fell while making a delivery while working, the discrepancies in the date of accident contained in his medical records call into question his testimony that his condition of left knee ill-being was the result of an accident on March 17, 2016.

¶ 42    The Commission's finding that the claimant was not credible is also supported by the evidence of record relating to the extent of the claimant's claimed condition of ill-being. The claimant characterized the pain he experienced when he fell as 9 on a scale of 10. He testified that, on March 18, 2016, the day following his accident, he could not bend his left knee and that the condition became progressively worse. According to the claimant, he knew something was "really wrong" with his knee. However, the record establishes that he continued working his regularly scheduled work days throughout the month of March 2016, and never sought medical treatment for his knee until March 29, 2016, 12 days after his alleged accident. During the month of April 2016, the claimant worked his regularly scheduled work days and there is no record of his having sought any medical care for his left knee during that month. Although the claimant was seen by Dr. Hussain on April 20, 2016, the doctor's notes of that visit make no mention of the claimant having reported an injury to his left knee. What Dr. Hussain's notes of that visit do reflect is that, in the course of his examination of the claimant, he examined the claimant's knees, bilaterally, and noted that the claimant's knees appeared normal, and he had no difficulty bending his knees. There is no record of the claimant having sought further care for his left knee from March 29, 2016, until June 14, 2016, when he saw Dr. Bayran. Dr. Lieber was of the opinion that the claimant's subjective complaints were out of proportion to his underlying abnormalities. The Commission could reasonably conclude that the claimant's exaggeration of the extent of his left knee condition

reflected adversely upon his overall credibility.

¶ 43    The claimant's medical records clearly establish that he suffers from a condition of left knee ill-being. However, the record reflects a dispute as to the source of that condition. Dr. Markarian opined that the claimant suffered from an osteocondral defect that is causally related to his work accident of March 17, 2016. However, the record of the claimant's March 29, 2016, treatment at Good Samaritan Hospital states that the x-rays taken of his knees revealed degenerative changes and bilateral loss of the medial tiblofemoral joint spaces, and Dr. Lieber reported that the MRI scan of the claimant's left knee showed a minor osteocondral lesion with no evidence of  acute trauma. Dr. Lieber opined that the claimant's left knee condition showed no causal connection to his alleged work accident on March 2016. Whether the claimant's left knee condition was degenerative in nature or the result of an accident was the subject of contradictory medical opinions, and it was the function of the Commission to resolve that conflict. *ABBF Freight System,* 2015 IL App (1st) 141306WC, ¶ 19.

¶ 44    The Commission also found that Nava was not a credible witness. Its determination was based upon her testimony that she and the claimant resided together from 2013 until September 2016 on West 24th Place in Cicero; whereas, the claimant listed an address on South Trumbull Avenue in Chicago when he was treated at Good Samaritan Hospital on March 29, 2016.

¶ 45    The Commission found that the claimant failed to prove that he suffered an accident while working on March 17, 2016. Its conclusion was based, in part, upon the discrepancies as to the date of accident contained in the claimant's medical records, as noted earlier, and its determination that both the claimant and Nava lacked credibility. Whether this court might have reached the same conclusions is not the test of whether the Commission's determination is supported by the manifest

weight of the evidence. Rather, the appropriate test is whether there is sufficient evidence in the record to support the Commission's determination. *Benson v. Industrial Comm'n*, 91 Ill. 2d 445, 450 (1982). Based upon the record before us, we are unable to conclude that the Commission's finding that the claimant failed to prove that he sustained a work-related accident on March 17, 2016, is against the manifest weight of the evidence, as an opposite conclusion is not clearly apparent.

¶ 46    For the reasons stated, we affirm the judgment of the circuit court that confirmed the Commission's decision denying the claimant benefits pursuant to the Act.

¶ 47    Affirmed.